STATE

v.

Gerald MARSHALL.

No. 99–401–C.A.

Supreme Court of Rhode Island.

March 22, 2002.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Ranen Schechner, Barbara Hurst/Paula Rosin/Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

The constitutionality of G.L.1956 § 11–35–17, entitled Crank or obscene telephone calls (the statute), is challenged in this appeal.[1]  However, because we conclude

---

1.  General Laws 1956 § 11–35–17(a) provides: "Whoever originates a transmission by facsimile machine, or other telecommunication device or telephones any person repeatedly or causes any person to be tele-phoned repeatedly for the sole purpose of harassing, annoying, or molesting that person or his or her family, whether or not conversation ensues; or whoever originates a transmission by facsimile ma-

that the trial justice's instruction to the trial jury was prejudicially erroneous and requires us to remand the case for a new trial, we leave consideration of the constitutional question for another day.

The defendant, Gerald Marshall (Marshall or the defendant), was charged by criminal complaint with one count of making a crank or obscene telephone call in violation of § 11–35–17(a) and subsequently was convicted of that charge by a Superior Court jury. He was sentenced to a six-month suspended term of imprisonment with probation for one year. In addition, he was ordered to attend anger management counseling.

After the judgment of conviction was entered, Marshall appealed to this Court, seeking reversal of his conviction and entry of judgment of acquittal on grounds that the Crank or obscene telephone calls statute is impermissibly overbroad and unconstitutional on its face. He also contends that the trial justice misconstrued the statute and erred when instructing the trial jury concerning the intent necessary to support a conviction under the statute.

## I

### Facts/Procedural History

On August 1, 1998, Marshall telephoned his estranged wife, Cynthia Marshall (Cynthia), at her workplace to discuss the possibility of reconciliation.[2] It was not the first time that Marshall had made such a telephone call; indeed, during the preceding several weeks, Marshall had telephoned Cynthia at least once daily and, on occasion, as many as ten times in one day. These telephone calls followed the same general pattern. At first he would entreat her to reconcile with him. When she rejected his proposals, he would become angry, resort to name calling, and use abusive and obscene language. At that point, Cynthia usually would terminate the telephone call.

During the particular telephone call at issue in this case, and unlike his many previous calls, Marshall threatened to kill Cynthia. He told her that he would go to her workplace, wait for her to leave and then kill her and whoever she was with at the time. Although Cynthia admittedly was not frightened by his threat, nevertheless, she hung up the telephone receiver, thereby terminating the call. Within minutes, Marshall telephoned back and continued his abusive tirade against Cynthia. Again, she hung up the telephone receiver. At that point, she decided to report Marshall's telephone calls to the police.[3] Marshall later was arrested, charged and subsequently tried before a Superior Court trial jury.

At the close of the state's case, defense counsel moved for judgment of acquittal. He contended that Cynthia's testimony disclosed that the sole purpose for Mar-

chine, or other telecommunication device or telephones any person for the purpose of using any threatening, vulgar, indecent, obscene, or immoral language over the telephone, is guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars ($500), by imprisonment for not more than one year, or both."

2. The only testimony adduced at trial was from the defendant's estranged wife, Cynthia Marshall.

3. On the previous day, Cynthia had applied for a restraining order against Marshall and was advised by the police that she report to them any contact that he might have with her. The record reveals, however, that when the offending telephone call was made, Marshall had not yet been given notice of the restraining order.

shall's telephone call to Cynthia on August 1, 1998, was to attempt a reconciliation of their marriage, and that the plain language of § 11–35–17 required him to have initiated his telephone call for the purpose of directing any "threatening, vulgar, indecent, obscene, or immoral language" to Cynthia. In addition, defense counsel challenged the constitutionality of the statute on First Amendment grounds. The trial justice denied the motions. Defense counsel then elected not to present any defense evidence and rested.

After closing arguments, the trial justice instructed the jury. He instructed the jury that the state was required to prove "the case beyond a reasonable doubt." [4] Later, he defined the elements required to be proven beyond a reasonable doubt by the state as:

> "(1) that the defendant made a phone call, (2) he made it to his wife and, (3) during the course of that phone call he made threatening and vulgar and obscene remarks to her. That's what the state has to prove."

Defense counsel objected to the third element of this charge, contending that the state also had the burden to prove that at the time the defendant initiated the telephone call to Cynthia, he then intended to do so for the purpose of threatening her or directing obscenities to her.

During its deliberations, the jury obviously was confused by the trial justice's instructions and submitted a question to him. It asked "if a phone conversation begins 'normally' under what circumstances can a phone call change and become a violation of the law?" The following colloquy then took place in open court:

"THE COURT: It's when you find, if you find, that the intent changed from a normal phone call to a threatening or obscene phone call. Does that help you?

"MR. FOREMAN: May I address—

"THE COURT: Well, I don't know, but go ahead.

"MR. FOREMAN: So, in other words, the intent can change during the course of the call?

"THE COURT: Intent doesn't have to be established at the beginning from all the, if you find that from all the evidence.

"MR. FOREMAN: And then is the charge for both threatening and obscene phone calls?

"THE COURT: It's for either or both. That help you? Go to work."

Defense counsel again objected. The jury later found Marshall guilty and he now appeals.

## II

### Standard of Review

▮ "It is well established in this jurisdiction that '[i]n considering a motion for judgment of acquittal, a trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, in fact giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt. * * * If the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt, the motion for judgment of acquittal must be denied. * * * In reviewing a trial

---

4. It is not clear that a jury could have understood this portion of the charge to mean that the state had the burden of proving each element of the crime beyond a reasonable doubt; however, as no objection was made, we deem this issue waived. *See Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 853 (R.I.2001).

justice's denial of such a motion, this Court applies the same standard as the tribunal below.'" *State v. Breen,* 767 A.2d 50, 55 (R.I.2001) (quoting *State v. Snow,* 670 A.2d 239, 243 (R.I.1996)).

## III

### Analysis

Marshall contends that the plain language of the statute requires him to have intended to use the proscribed language at the time he initiated the telephone call, and that the trial justice erred by instructing the jury that the intention to use threatening or obscene language could be formed at any time during the course of the telephone call. He asserts that the trial justice erred in denying his motion for judgment of acquittal because he claims that the uncontradicted evidence demonstrated that when he originated his telephone call to Cynthia, it was not for the purpose of threatening her, but rather, it was for the sole purpose of attempting to reconcile their marriage.

Marshall additionally asserts that to protect telephone harassment statutes from overbreadth challenges, various state statutes generally include "a specific intent requirement which links the language used to a nefarious purpose." He asserts that the Rhode Island Legislature failed make such a link, thereby rendering unconstitutional that portion of the statute with which he was charged. The state counters by contending that the challenged statute is designed to regulate conduct, not language, because it proscribes the act of placing a telephone call and unreasonably invading the recipient's peace and privacy. Consequently, it avers both that the statute is constitutional on its face and that Marshall does not have standing to challenge its constitutionality. However, we need not reach Marshall's constitutional challenge to the statute because we con-

clude that the trial justice failed to properly instruct the trial jury about the state's burden of proving when the defendant's intent to threaten Cynthia was required to exist.

In his instructions to the jury, the trial justice stated that:

"No person shall telephone any person for the purpose of using any threatening, vulgar, indecent, obscene or immoral language over the telephone. Now a person might make a phone call, start out in a very rational way but if the person, and if you find the person in the course of the phone call changed and did use threatening or vulgar or obscene language then you can find the defendant guilty."

He then instructed the jury that the state "has the burden to prove [ ] that * * * during the course of that phone call he made threatening and vulgar and obscene remarks to her."

Confused by these instructions, the jury asked the trial justice to clarify; specifically, it asked: "if a phone conversation begins 'normally' under what circumstances can a phone call change and become a violation of the law?" The trial justice told the jury that such circumstances would occur if it found "that the intent changed from a normal phone call to a threatening or obscene phone call[,]" and that "[i]ntent doesn't have to be established at the beginning from all the, if you find that from all the evidence."

■■■ It is axiomatic that "[g]enerally when a statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this [C]ourt will apply the plain and ordinary meaning of the words set forth in the statute." *State v. Smith,* 766 A.2d 913, 924 (R.I.2001) (quoting *State v. Bryant,* 670 A.2d 776, 779 (R.I.1996)). "[I]n interpreting a legislative

enactment, it is incumbent upon us 'to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Town of North Kingstown v. Albert,* 767 A.2d 659, 662 (R.I.2001) (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)).

We have stated previously that § 11–35–17(a) "is in the disjunctive [and] criminalizes telephoning another for the purpose of *either* (1) harassing, annoying, or molesting *or* (2) using threatening, vulgar, indecent, obscene or immoral language." *In re Fiske,* 117 R.I. 454, 458, 367 A.2d 1069, 1072 (1977). In this case, Marshall was charged with violating the second of those "separate and distinct cognate offenses" *id.,* namely, for telephoning Cynthia *"for the purpose of* using any threatening, vulgar, indecent, obscene, or immoral language over the telephone." Section 11–35–17(a). (Emphasis added.)

■ It is clear from the plain and ordinary meaning of the wording employed in the statute that the state had the burden in this case of proving beyond a reasonable doubt that at the time Marshall initiated his telephone call to Cynthia, he did so for the intended purpose of threatening her or subjecting her to the proscribed statutory language. Nevertheless, the trial justice in this case erroneously instructed the jury that Marshall's intent to do so need not have existed when he initiated the telephone call, but rather, it later could be formed after he had initiated the call. That was error. *See, e.g., State v. Wilcox,* 160 Vt. 271, 628 A.2d 924, 925 (1993).

Section 11–35–17, when strictly construed, as it must be, clearly mandates that the caller's intent to violate the statute had to exist when the telephone call was initiated. *See, e.g., Holloway v. United States,* 526 U.S. 1, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). In determining whether such specific intent actually existed at that time, the fact-finder is, of course, permitted to draw reasonable inferences from the nature and contents of the entire telephone call in order to determine if the caller's intent to threaten did or did not exist when the telephone call was initiated. Thus, for example, if a telephone conversation began normally but the caller's language later became threatening or obscene, the fact finder could infer from the totality of the trial evidence if, when originating the call, the caller then intended to engage in such misconduct.

In short, the trial jury in this case had the right to consider from the trial evidence and from the contents of the entire telephone conversation between Marshall and Cynthia whether Marshall's intent to violate the statute existed at the time he initiated his call to Cynthia. If so, the statute's intent requirement has been satisfied. However, this was not conveyed to the jury in the questioned instruction. Instead, the trial justice instructed the jury that they could find the necessary intent to have originated at any time during the call. The trial justice, it appears, ignored the clear wording in § 11–35–17 requiring that the caller's purpose when "originat[ing]" the telephone call must be predicated upon his or her then-existing intention to direct "threatening, vulgar, indecent, obscene, or immoral language" to the recipient of the call.

We conclude that the trial justice's instruction was misleading and erroneous and that such error unduly prejudiced the defendant. Because we sustain Marshall's appeal and vacate his conviction for reason of the trial justice's erroneous instruction to the jury, we refrain from passing upon his constitutional challenge to § 11–35–17. *See O'Connell v. Bruce,* 710 A.2d 674, 675 (R.I.1998).

The papers in this case are remanded to the Superior Court for a new trial.