FILED
United States Court of Appeals
Tenth Circuit

February 28, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ODIFU ODIFU,

Defendant - Appellant.

No. 23-1295
(D.C. No. 1:21-CR-00047-PAB-1)
(D. Colo.)

_____

## ORDER AND JUDGMENT*

_____

Before **TYMKOVICH**, **BALDOCK**, and **EID**, Circuit Judges.

_____

Defendant Odifu Odifu's indecision as to whether to turn left or proceed straight at a green light on Colfax Avenue in Aurora, Colorado, resulted in his BMW colliding with a GMC pickup truck driven by Ariana Estrada-Gomez. The two pulled onto a side street ostensibly to exchange insurance information. But Defendant's agitation prompted Estrada to phone 911. As Defendant walked up to Estrada's window, he drew a semiautomatic pistol and racked the slide, placing a bullet in the pistol's chamber. Defendant held the pistol to Estrada's head and told her to get out of her pickup. Defendant then slapped the phone out of Estrada's hand and hit her on the

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

head with the pistol's muzzle. At the same time, a passenger in Defendant's BMW, Kwami Austin, removed Estrada's boyfriend, Victor Reyes, from the pickup at gunpoint. When Defendant was unable to open the drivers-side door of the pickup, he pointed his pistol at Reyes and threatened to shoot Estrada if Reyes did not tell her to get out. Reyes recalls Defendant yelling, "I will blast her head off if you guys don't get out of the fucking car." Amber Quintana, also a passenger in the BMW, stated she heard Defendant tell Estrada, "I'll shoot you, don't think I won't." Once Estrada and Reyes were standing outside the pickup, Defendant got in and drove away. As Quintana drove off in the BMW, she slowed down so Austin could jump in. Hours later, law enforcement officials tracked Estrada's pickup truck to a Walmart via the truck's onboard navigation system. Defendant fled on foot but was soon apprehended. Officers found the still-chambered pistol Defendant used to carjack Estrada's truck on the ground near where he was apprehended.

A superseding federal indictment charged Defendant with one count of carjacking in violation of 18 U.S.C. § 2119 (Count I), one count of brandishing a firearm in the course of committing a crime of violence (*i.e.*, carjacking) in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count II), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count III). Following a three-day trial, a jury found Defendant guilty on all three counts. The district court sentenced him to 100-months' imprisonment on Counts I and III, to be followed by a consecutive sentence of 84-months' imprisonment on Count II, for a total imprisonment term of 184 months.

On appeal Defendant raises two issues for our consideration. First, Defendant argues the district court erred by granting the Government's motion in limine, thereby prohibiting Defendant from presenting evidence of his mental health condition at the time of the incident. According to Defendant, this evidence would have negated the specific intent element of the carjacking offense—the intent to kill or harm *if necessary* to effect a carjacking— required to convict him on both Counts I and II. *See Holloway v. United States*, 526 U.S. 1, 12 (1999). Defendant further argues the district court erred by refusing to tender his jury instruction defining specific intent generally. Our jurisdiction arises under 28 U.S.C. § 1291. Our standard of review for both of the district court's challenged rulings is abuse of discretion. *United States v. Sorensen*, 801 F.3d 1217, 1228 (10th Cir. 2015); *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003). We reject both of Defendant's arguments and affirm.

I.

Prior to trial, Defendant provided notice that he would introduce evidence of diminished capacity, namely expert testimony relating to a mental disease or defect bearing on the question of his intent to commit carjacking. Defendant, however, stopped short of claiming he was insane at the time of the incident. Dr. Richard Martinez and Dr. Teresa Mayer, both forensic psychiatrists, completed a psychiatric evaluation of Defendant and prepared a report. Dr. Thomas Gray, a psychologist, performed an examination of Defendant and similarly prepared a report. Defendant intended to present testimony from all three doctors to refute the specific intent element of Counts I and II. In a well-reasoned order, the district court held such mental health

evidence was inadmissible because Defendant failed to establish a direct link between the proposed evidence and the specific intent required for his convictions.

The Insanity Defense Reform Act (IDRA) is the point of departure for our analysis. The IDRA provides an affirmative defense to a defendant if at the time of the offense, "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts." 18 U.S.C. § 17. Notably, "[m]ental disease or defect does not otherwise constitute a defense." *Id.* While "IDRA bars the introduction of evidence of a defendant's mental disease or defect to demonstrate that he lacked substantial capacity to control his actions or reflect upon the consequences or nature of his actions[,] . . . evidence of a defendant's mental condition [remains] admissible [not as a defense but] for the purpose of disproving specific intent." *Brown*, 326 F.3d at 1146. In other words, "IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent." *Id.* at 1147 (quoting *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002)). We have observed, however, that "such cases will be rare." *Id.* (quoting *Worrell*, 313 F.3d at 872). "The admission of such evidence will depend upon whether the defendant *clearly* demonstrates how such evidence would negate specific intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.'" *Id.* (emphasis added) (quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)).

In this case, we have carefully studied the experts' reports. After doing so, we would be remiss if we failed to acknowledge that Defendant Odifu, at least when unmedicated, suffers in no small measure from mental illness or disease, including what the report of Drs. Martinez and Thayer refers to as "schizophrenia" and "unspecified trauma-and-stressor-related disorder." According to the report, such illness or disease causes Defendant to suffer from paranoia, auditory hallucinations, and mood swings. In particular, the report suggests Defendant has "a notable tendency to misperceive the behavior of others, as well as related events." The report states that while Defendant's "overall cognitive functioning remains relatively intact" and he "recognized that it was wrong to hold a gun to another person's head and wrong to drive away in a truck that did not belong to him," he "has a significant thought disorder that likely affects his day-to-day functioning in various ways, depending in part on the extent to which he complies with prescribed medications." The report concludes:

> Mr. Odifu, due to his mental illness, misinterpreted what most people would see as a simple fender bender. Mr. Odifu interpreted this minor traffic accident as being evidence of a nefarious plot against his life that required him to "do something before something was done to him." Mr. Odifu's actions, while unfortunate, were impulsive and unplanned.

> It is our opinion . . . that Mr. Odifu's psychiatric condition, schizophrenia, demonstrably impaired his perception and interpretation of reality at the time of the alleged offense. . . . Mr. Odifu was suffering symptoms of a major mental illness that resulted in diminished capacities in rational thought and decision-making, reasoning and planning, perception, restraint, and ultimately behavior.[1]

---

[1] The much shorter report of Dr. Gray reaches a similar conclusion. It agrees that while his "overall cognitive functioning remains relatively intact[,]" Defendant's

Given our review of the reports, we acknowledge that Defendant likely misinterpreted the situation and his paranoia led him to believe the occupants of the truck intended to harm him. But, as the district court reasoned, the reports provide "no explanation for why the Defendant did not act with [the] specific intent [required by sections 2119 and 924(c)(1)(A)(ii) of Title 18] when he got out of his vehicle with a gun in his hand, approached the driver of the truck, held the gun to her head, and ordered her out of the vehicle." The experts' reports indicate that Defendant's reasons for offering their testimony was "to demonstrate that he lacked substantial capacity to control his actions or reflect upon the consequences or nature of his actions." *Brown*, 326 F.3d at 1146. In other words, the reports opine that because of his mental condition, Defendant was unable to conform his conduct to the requirements of the law and make correct choices. *Id.* at 1148. But as we concluded in *Brown*, "[s]uch evidence is inadmissible psychological or psychiatric evidence," because, instead of bearing upon Defendant's specific intent, it is "more akin" to the defense of "justification and excuse." *Id.* at 1147–48. Accordingly, the district court acted well within its discretion when it granted the Government's motion in limine to preclude Defendant's experts from testifying as to his mental condition.

---

"psychiatric condition causes him to misinterpret the actions of others, as well as situations in which he finds himself, and his distorted thinking compounds that to a highly problematic degree."

6

II.

Defendant's second argument is that the district court committed reversible error by refusing to tender his proposed specific intent instruction on Count I, the carjacking count, to the jury. The district court instructed the jury that to find Defendant guilty of carjacking, the jury must find beyond a reasonable doubt, among other elements of the crime, that "the Defendant intended to cause death or serious bodily injury." The instruction then informed the jury, consistent with *Holloway*, 526 U.S. at 12, that "intended to cause death or serious bodily injury means the Defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." Defendant says this instruction did not go far enough. He proposed this additional language: "A specific intent crime is one in which an act is committed voluntarily and purposely with the specific intent to do something the law forbids. A specific intent crime is one in which the defendant acts not only with knowledge of what he is doing, but does so with the objective of completing the unlawful act."

While an instruction defining specific intent in the abstract may not constitute error per se, Defendant's proposed instruction was unnecessary because the district court's instruction properly informed the jury as to the specific intent required by the carjacking statute, 18 U.S.C. § 2119. An instruction defining specific intent in the abstract may be too general and potentially misleading. The Supreme Court has suggested that rather than define the phrase in the abstract, "[a] more useful instruction might relate specifically to the mental state required under . . . [the particular statute a

defendant is charged with violating] and eschew use of difficult legal concepts like 'specific intent' . . . ." *Liparota v. United States*, 471 U.S. 419, 433 n.16 (1985). In this case, the district court did just that. The court did not abuse its discretion in doing so.

* * *

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
United States Circuit Judge