**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2903

_____

UNITED STATES OF AMERICA

v.

AMIR WILSON, a/k/a Rahmir Wilson, a/k/a Bey Tahmir Jones,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cr-00373-001)
District Judge: Hon. Juan R. Sánchez

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 19, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*

(Filed: September 22, 2025)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

When a carjacker brandishes a gun and points it at a driver, a jury may infer that he

intended to seriously injure his victim if needed to complete the carjacking. Amir Wilson

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

was convicted of two carjackings, a carjacking conspiracy, and brandishing a gun during a violent crime. Because the evidence was sufficient to show his intent to injure and the court's intent instructions were proper, we will affirm.

## I. THE STRING OF CARJACKINGS

Late one night in North Philadelphia, Jill Walston was sitting in her car when another car pulled diagonally ahead of her, blocking her escape. Two men in ski masks jumped out and pointed guns at her head. They ordered her out of the car, snatched her car keys, and drove both cars away.

Four days later, also in North Philadelphia, John Quinones got into his white Nissan Maxima to go to work. A similar car with several armed men wearing ski masks pulled up next to him. As Quinones got out of the car, two of the men surrounded him, patted down his pants pockets, pressed a gun to his head, took his keys, and drove off with his car.

Several hours later, after celebrating graduation, Andres Perez and his friend Samir Diggins walked to Perez's car in North Philadelphia. A white Nissan screeched to a halt behind them and two armed men in ski masks jumped out. One pointed a gun at Perez's ribs and the other at his head. Then a third gunman got out of the car. After they grabbed Perez's keys, Diggins ran off, chased by one of the men.

Later that day, police in North Philadelphia spotted a white Nissan Maxima, ran its license plate, and learned that it was Quinones's stolen car. Police chased the car, it crashed, and the driver and passenger fled on foot. Yet police caught and arrested them both: Amir Wilson and Anwar Abdul-Ali. Both men were separately charged with three carjackings,

2

conspiracy to carjack, and brandishing a firearm during a violent crime. 18 U.S.C. §§ 2119, 371, 924(c)(1)(A)(ii) & 2.

At Wilson's jury trial, the government put on an array of evidence. The four victims testified. The government also showed photos and videos from Wilson's and Abdul-Ali's Instagram accounts. In several of them, Wilson posed with an Uzi-style gun and a pistol with an extended magazine, matching the guns described by Quinones and Perez. The government also put on electronic evidence that, during the second and third carjackings, Wilson's cellphone was in the area. The jury acquitted him of the first carjacking but convicted on all other charges.

On appeal, Wilson claims that the evidence was insufficient to show that he intended to cause death or serious bodily harm and that the jury instructions misstated the intent required for carjacking. Both claims fail.

## II.   ENOUGH EVIDENCE SHOWED THAT WILSON INTENDED BODILY HARM

Wilson does not contest the sufficiency of the evidence in general. He claims only that the evidence was insufficient, as a matter of law, to prove that he carjacked "with the intent to cause death or serious bodily harm." § 2119. He claims that the government proved no more than an intent to intimidate, that it never proved that the guns were loaded or even operable, that the carjackers never verbally threatened the victims, and that they even let Quinones take off his lanyard and keep his house keys.

We review the sufficiency of the evidence de novo. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). Viewing the evidence in the light most favorable to the government, we will overturn the convictions only if no reasonable juror could have found the

3

defendant guilty beyond a reasonable doubt. *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013).

For carjacking, the government need not show that the defendant intended to harm the driver (or passenger) no matter what. All it has to show is conditional intent: "that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary" to take the car. *Holloway v. United States*, 526 U.S. 1, 3, 12 (1999).

A reasonable juror could find that Wilson or his accomplices intended to kill or injure the victims if needed to steal their cars. The gun seized from Abdul-Ali resembled the pistol used in the carjackings and was successfully test-fired. Plus, Quinones testified that a gun was held to the back of his head, Perez testified that a gun was pointed at his ribs, and Diggins saw a gun pointed at Perez's head before Diggins was chased by another gunman. Though the carjackers did not fire the guns, use other force, or utter threats, this brandishing and touching were enough. Whether the weapons were loaded or not, the jury could infer intent to seriously harm. *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998) (Alito, J.); *see also United States v. Fekete*, 535 F.3d 471, 478–81 (6th Cir. 2008); *United States v. Small*, 944 F.3d 490, 499–500 (4th Cir. 2019) (Wilkinson, J.).

### III.   THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY

For the first time on appeal, Wilson claims that the carjacking-intent instruction was defective. He argues both that it did not use the phrase "specific intent" and that the aiding-and-abetting instruction watered it down. Because he never objected below, we review only for plain error. *United States v. Petersen*, 622 F.3d 196, 202 n.4, 203 (3d Cir. 2010). There was no error, let alone a plain one.

4

The District Court's instruction quoted the Supreme Court's holding in *Holloway* almost verbatim: "[T]he Government [must] prove[ ] that at the moment [ ] defendant demanded or took control [of] the [vehicle] the defendant possessed the intent to seriously harm or kill the driver[,] if necessary[,] to steal the car." App. 881 (quoting *Holloway*, 526 U.S. at 12) (all brackets except the first pair reflecting alterations by the District Court). It also tracked *Holloway*'s language that conditional intent to harm suffices but mere intent to frighten does not. *Compare* App. 882 *with* 526 U.S. at 4, 11.

Likewise, the standard aiding-and-abetting instruction stated the law accurately. The District Court correctly told the jury that it had to find that the accomplice had to act not just with knowledge, but "with the intent that the principal commit those specific offense[s]." App. 883–84; *cf. Petersen*, 622 F.3d at 208–09 (analyzing Third Circuit Model Criminal Jury Instruction § 7.02, used here too). That was proper. Wilson asserts, without explanation, that the District Court's aiding and abetting instruction "dilute[d] the specific intent required for … carjacking." Appellant's Br. 13–14. Yet we see no error: The instruction simply, and correctly, told the that jury it needed to find that the principal satisfied the elements already outlined. App. 883; *see United States v. Ozcelik*, 527 F.3d 88, 94–95 (3d Cir. 2008).

\* \* \* \* \*

The jury could reasonably infer that when the carjackers brandished guns and pointed them at their victims, they intended to harm them if needed to steal the cars. And the jury instructions properly required jurors to find that intent plus any accomplices' intent to aid the carjackings. We will thus affirm.

5