*1162 HENRY, Circuit Judge,
concurring in part and dissenting in part,
I agree with the majority that the evidence is sufficient to support Mr. Torres’s burglary conviction and that Mr. Torres is not entitled to habeas relief on his claims for prosecutorial misconduct and destruction of evidence.
As to Mr. Torres’s challenge to the sufficiency of the evidence supporting his murder convictions, I would reach the same result as the majority — that Mr. Torres is not entitled to habeas relief — but I would do so for a different reason. Unlike the majority, I do not believe that the evidence is sufficient to support Mr. Torres’s murder convictions. However, I cannot conclude that the Oklahoma Court of Criminal Appeals’ decision to the contrary constitutes an unreasonable application of federal law such that Mr. Torres is entitled to habeas relief.
In contrast, as to Mr. Torres’s challenge to the jury instructions, I conclude that he is entitled to habeas relief. In my view, the jury was not properly informed that it was required to find that Mr. Torres intended to kill the victims, as required by Oklahoma law. The Court of Criminal Appeals’ rejection of this claim constitutes an unreasonable application of federal law. I would hold that, as to the murder convictions, Mr. Torres is entitled to habeas relief on that ground, and I would allow the state of Oklahoma to retry him before a properly instructed jury.

A. Sufficiency of the Evidence

The majority concludes that “the record does suggest that a rational juror certainly could conclude that Mr. Torres had the requisite intent to kill.” Op. at 1155. In support of that conclusion, the majority relies on the following evidence: (1) Mr. Torres and Mr. Ochoa were seen carrying guns near the murder scene; (2) the door of the Yanez/Morales residence had been kicked down; (3) the children of the murder victims identified Mr. Torres and Mr. Ochoa as the two men who broke into the residence; (4) the victims were shot repeatedly; (5) “[although there was time to rob the victims after the homicides, Mr. Torres (and Mr. Ochoa) walked back and forth in the house;” op. at 1156; (6) “Ms. Yanez’s purse was taken, but money and personal property were found on the victims, suggesting an intent to kill, rather than merely to rob,” id.; (7) “Mr. Torres and Mr. Ochoa conversed in whispers after the murders, rather than indicating surprise or taking more property;” id.; (8) when observed by police after the murders, Mr. Torres had blood on his shirt; (9) Mr. Torres was “well acquainted” with Mr. Ochoa. Id.
Although I agree that this evidence provides support for the prosecution’s contention that Mr. Torres intended to kill the victims, I do not believe that this evidence allows a rational juror to “reach a subjective state of near certitude,” see Jackson v. Virginia, 443 U.S. at 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (defining the beyond-a-reasonable-doubt standard), on that issue.
In my view, there are two key gaps in the prosecution’s case against Mr. Torres for malice murder. First, there is no direct evidence of Mr. Torres’s motive. Second, the prosecution did not present any direct evidence of Mr. Torres’s role in the shooting. In light of the testimony of Mr. Morales’s son — that he saw a man in a dark shirt shooting his father — the prosecution’s theory was that Mr. Ochoa was the shooter. The prosecution was unable to present testimony as to the conduct of another person inside the residence before or during the shooting.
Although the evidence cited by the majority does support the conclusion that Mr. Torres broke into the residence and fled *1163 after Mr. Ochoa shot the victims, those two key gaps in the prosecution’s case foreclose a rational juror’s finding beyond a reasonable doubt that Mr. Torres intended to kill the victims. In this regard, I note that a number of courts have deemed evidence resembling that on which the majority here relies insufficient to establish an intent to kill.[1]
In spite of this deficiency in the evidence, however, Mr. Torres faces an extremely high hurdle in seeking habeas relief on his sufficiency of the evidence claim: he must establish not merely that the Court of Criminal Appeals’ conclusion is incorrect but also that the court’s conclusion constitutes an unreasonable application of the standard announced by the Supreme Court in Jackson, 443 U.S. at 319, 99 S.Ct. 2781. See Williams, 529 U.S. at 412, 120 S.Ct. 1495 (stating that “an unreasonable application of federal law is different from an incorrect or erroneous application of federal law”) (emphasis in original).
Although there is not an extensive body of case law distinguishing an unreasonable application of Jackson from one that is merely incorrect, several recent circuit decisions have identified factors relevant to this inquiry. First, “the failure of the state court to consider at all a key argument of the defendant may indicate that [the state court’s] conclusion is objectively unreasonable.” Hurtado v. Tucker, 245 F.3d 7, 18 (1st Cir.2001). “[T]he failure ... to give appropriate weight to all of the evidence” may also indicate an unreasonable decision. Id.; see also Piaskowski v. Bett, 256 F.3d 687, 694 (7th Cir.2001) (concluding that the state court unreasonably applied Jackson because the court found that the defendant “kicked and beat [the murder victim]” despite the fact that “the record was devoid of any direct evidence” of such an act and because “the available circumstantial evidence at most cast[ ] suspicion on [the defendant]”). Finally, “the reasoning used by the state court is ... pertinent.” Hurtado, 245 F.3d at 20 (citing Williams, 529 U.S. at 391-98, 120 S.Ct. 1495). However, “the paucity of reasoning *1164 employed by the state court does not itself establish that its result is objectively unreasonable.” Hurtado, 245 F.3d at 18. The ultimate question ... is ... “whether the outcome is reasonable.” Id. at 20.
Here, in considering Mr. Torres’s challenge to the sufficiency of the evidence that he intended to kill the victims, the Court of Criminal Appeals reviewed the evidence presented by the prosecution, see Torres, 962 P.2d at 15-16, and then rejected Mr. Torres’s argument that the facts of his case were analogous to two cases in which the evidence of intent to kill the victim was insufficient. See id. at 16 n. 40 (citing Sanders/Miller, 710 F.2d at 646-47 (10th Cir.1983), and Anderson v. State, 66 Okla.Crim. 291, 91 P.2d 794 (Okla.Crim.App.1939), and stating that “in [those cases] the courts found there was no evidence to support premeditated design to kill”). The court then stated: “Here, [Mr.] Torres’ actions can support a finding of intent as discussed in Johnson v. State, 928 P.2d 309, 315 (Okla.Crim.App.1996).”
To me, the court’s reliance on Johnson is troubling. That case contains the very Mnd of evidence of announced intention that we discussed in Wingfield v. Massie, 122 F.3d 1329, 1332-34 (10th Cir.1997). See maj. op. at 1152-53 (discussing Wingfield); Wingfield, 122 F.3d at 1333 (stating that a jury may infer that the defendant “intends those consequences which he announces a desire to accomplish”). In Johnson, the Court of Criminal Appeals noted that, “[i]n the space of three days [, the defendant] foretold how and why [the victim] would be killed, [the defendant] told tenants he could take care of the problems [the victim] caused,” and, “while [the victim] was being attacked [, the defendant] or [his accomplice] told [the victim] the precise reason, articulated earlier by [the defendant,] for the attack.” Johnson, 928 P.2d at 315. Characterizing this evidence, the court continued: “There is no doubt whatsoever that this [defendant] personally intended that [the victim] die.” Id. (emphasis added).
Moreover, the record in Johnson also contained evidence concerning the manner in which the defendant assisted in the homicide. The victim, who lived for seventeen hours after the attack, told police officers that the defendant hit him over the head with a baseball bat while another man poured gasoline on him from a plastic jug and set him on fire. See id. at 313.
Here, the evidence that Mr. Torres intended the death of the victims is not nearly as strong as the evidence against the defendant in Johnson, particularly since the prosecution did not present direct evidence that Mr. Torres assisted in the homicides. Nevertheless, I cannot conclude under our deferential standard of review that the Court of Criminal Appeals application of the Jackson standard is unreasonable. Sufficiency of the evidence determinations are made by assessing the totality of the circumstances in the individual case. As a result, Mr. Torres cannot point to a body of case law clearly establishing that the particular set of facts presented by the prosecution here is insufficient to establish an intent to kill. As the majority notes, there is considerable evidence suggesting that Mr. Torres was involved in the killings. Although under a de novo standard of review, I would not conclude that this evidence is sufficient, I am convinced that the OMahoma Court of Criminal Appeals’s conclusion to the contrary was not unreasonable.

B. Jury Instructions

I also disagree with the majority’s analysis of the jury instructions. I acknowledge that a habeas petitioner such as Mr. Torres is only entitled to relief on this ground if the instructional error undermines the fundamental fairness of the trial. *1165 See Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In my view, however, the instructions’ failure to adequately inform the jury of a crucial element of malice murder under Oklahoma law does meet that standard.
As noted above, the Court of Criminal Appeals held that, in order to convict Mr. Torres of malice murder, the prosecution was required to prove that Mr. Torres (1) “personally intended the death of the victim[s] and (2) aided and abetted with full knowledge of the intent of the perpetrator.” Torres, 962 P.2d at 15. In spite of that requirement, the instructions did not adequately inform the jury of the prosecution’s burden of proving Mr. Torres’s intent.
The jury did receive general instructions as to the law of aiding and abetting. Instruction 11 informs the jury that “[a] person concerned in the commission of a crime as a principal is one who directly and actively commits the acts constituting the offense, knowingly and with criminal intent aids and abets in the commission of the offense, or who advises and encourages the commission of the offense.” St. Ct. Rec. vol. II, at 513 (instr. no. 11). The following instruction adds:
One who does not actively commit the offense, but who aids, promotes, or encourages its commission, either by act or counsel or both, is not deemed to be a principal to the crime unless he did what he did knowingly and with criminal intent. To aid or abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding in the commission of that criminal offense.
Id. at 514 (instr. no. 12).
These aiding and abetting instructions thus refer to “criminal intent” and to the “consciousness of guilt in instigating, encouraging, promoting, or aiding” the offense. Id. at 513-14. They do not expressly refer to the need to find that the aider and abettor acted with the intent to kill the victims.
The jury instructions also set forth the elements of malice murder. Instruction 4 informs the jury that, in order to convict the defendants of that offense, the prosecution is required to prove: (1) “the death of a human”; (2) “the death was unlawful”; (3) “the death was caused by the defendants”; and (4) “the death was caused with malice aforethought.” Id. at 506 (emphasis added). Instruction 5 proceeds to define malice aforethought as “deliberate intention to take away the life of a human being” and adds that malice aforethought does not mean “hatred, spite or ill-will.” Id. at 507.
Like the aiding and abetting instructions, these instructions on the elements of malice murder are unclear as to the finding of intent required to convict Mr. Torres individually. One reasonable reading of these instructions is that the referenced “malice aforethought” is the malice aforethought of Mr. Ochoa rather than of Mr. Torres himself.
I do note that both the Oklahoma Court of Criminal Appeals and the federal district court concluded that, when read as a whole, the instructions properly required a finding that Mr. Torres acted with the intent to kill the victims. In particular, the Court of Criminal Appeals held that its earlier decision in Johnson v. State, 928 P.2d 309, 315-16 (Okla.Crim.App.1996), was controlling:
Like Torres, the appellant in Johnson complained that the trial court erred in using the Oklahoma Uniform Instructions on aiding and abetting in a first degree malice murder case. Like Torres, Johnson argued the instructions allowed the jury to replace a general intent with a specific intent to kill thus *1166 lessening or changing the State’s burden of proof. The Johnson Court rejected this argument finding that these instructions in conjunction with the instructions on first degree murder -properly set out Oklahoma law and channeled the jury’s discretion.
Torres, 962 P.2d at 16.
Similarly, the federal district court concluded that, when read as a whole, the instructions properly informed the jury that, in order to convict Mr. Torres of malice murder, it was required to find that he acted with malice aforethought. The district court pointed to instruction 4, which sets forth the elements of malice murder, and instruction 5, which defines malice aforethought.
Our court has addressed this issue in two recent habeas cases. Cannon v. Gibson, 259 F.3d 1253, 1269-71 (10th Cir.2001) and Johnson v. Gibson, 254 F.3d 1155, 1162-63 (10th Cir.2001). Both cases construe the instructions as a whole and find that the Oklahoma jury was properly instructed that it had to find that the defendant acted with intent to kill.
Importantly, however, in both cases, there were instructions that focused the jury on the intent of the individual defendant. Thus, in Cannon, the jury was informed that “[i]t is the burden of the State to prove beyond a reasonable doubt that the Defendant formed the specific criminal intent of the crime[ ] of Murder in the First Degree.” Cannon, 259 F.3d at 1271 n. 19. In Johnson, “the trial court specifically instructed jurors that the State had to prove beyond a reasonable doubt that Johnson ‘formed the specific criminal intent of malice aforethought.’ ” Johnson, 254 F.3d at 1163 (quoting the relevant jury instruction). Additionally, in neither Cannon nor Johnson is there any indication that the trial court referred to “the defendants” collectively when it defined malice aforethought, as the trial court did here. Indeed, in both Cannon and Johnson, the trials at issue involved one defendant, not two. See Cannon, 259 F.3d at 1258 n. 1 (noting that the defendant Cannon was initially tried with a codefendant but that the Oklahoma Court of Criminal Appeals reversed his initial conviction on the grounds that he should have been tried separately); Johnson, 254 F.3d at 1158 (noting that “[t]he State tried Johnson and Masquat separately”). Thus, unlike the instant case, these cases did not present the risk that the jury could impute a finding of malice aforethought from one defendant to another.
I acknowledge that the jury did receive several other instructions that directed it to focus on the conduct of each defendant individually. In particular, instruction 6 informs the jury that “[n]o person may be convicted of Murder in the First Degree unless his conduct caused the death of the person allegedly killed.” St. Ct. Rec. vol. II, at 508. Instruction 6 further specifies that “[a] death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.” Id.
Similarly, instruction 13 informs the jury that the jury should “give separate consideration to the case of each individual defendant.” Id. at 515. Instruction 13 also states that “[ejach defendant is entitled to have his case decided on the basis of the evidence and the law which is applicable to him.” Id.
However, despite these instructions, I do not believe that the jury was clearly informed that, in order to convict Mr. Torres of malice murder, the jury was required to determine that Mr. Torres “personally intended the death of the victim[s] and aided and abetted with full knowledge of the intent of the perpetrator.” Torres, 962 P.2d at 16 (internal quotation marks omitted). Finding that Mr. Torres’s conduct “[wa]s a substantial factor in bringing *1167 about the death [of the victims],” St. Ct. Rec. vol. II, at 508 (instr. no. 6), is clearly not the same as finding that he intended the death of the victims. Instead, the finding required by instruction 6 resembles the finding necessary to support a conviction for felony murder, see Okla. Stat. tit. 21, § 701.7(B), rather than malice murder. Similarly, the instruction that the case against the defendants should be considered separately merely refers the jury to the other instructions — instructions that do not clearly inform the jury that the prosecution was required to prove Mr. Torres’s intent to kill.
In light of the fact that Mr. Torres was tried jointly with Mr. Ochoa, it was crucial for the jury to understand that it could not convict Mr. Torres of malice murder unless he personally intended the death of the victims. Because these instructions did not so inform the jury, Mr. Torres is entitled to habeas relief.

C. CONCLUSION

Many of the prosecution’s difficulties in this case appear to have arisen out of its own strategic decision to dismiss the initial felony murder charge against Mr. Torres. Had the prosecution proceeded under a felony murder theory, it would not have been required to prove beyond a reasonable doubt that Mr. Torres intended to kill the victims in order to obtain a conviction. See Okla. Stat. tit. 21 § 701.7(B); Freeman v. State, 876 P.2d 283, 287 (Okla.Crim.App.1994) (discussing the elements of felony murder).[2] That determination would only be necessary during the sentencing phase of the trial.
The reason for the prosecution’s dismissal of the felony murder charges is not clear on this record. At oral argument, counsel for the respondent suggested, unconvincingly, that the prosecution did not need to resort to the felony murder doctrine because the evidence of Mr. Torres’s intent to kill was so strong. In contrast, Mr. Torres’s counsel offered a more plausible explanation: that by dropping the felony murder theory and obtaining malice murder convictions, the prosecution was able ease its burden at the penalty phase. In particular, citing Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), Mr. Torres’s counsel contended that, in light of the jury’s apparent finding during the guilt phase that Mr. Torres intended to kill the victims, the prosecution was not required to argue that issue at the penalty phase, as it would have been if Mr. Torres had been convicted of felony murder. See Fowler v. Ward, 200 F.3d 1302, 1309 (10th Cir.2000) (stating that Enmund and Tison “require that the jury give individualized consideration to the culpability of defendants prior to imposing the death penalty”).
In any event, by forgoing the felony murder charges, the prosecution imposed upon itself the high burden of proving that Mr. Torres intended to kill the victims when it had no direct evidence of his motive and no direct evidence of his involvement in the actual shootings. Although our deferential standard of review under 28 U.S.C. § 2254 precludes relief on Mr. Torres’s sufficiency of the evidence claim, Mr. Torres is entitled to relief on his claim regarding the jury instructions. Because those instructions did not properly inform the jury that it was required to find that *1168 Mr. Torres intended to kill the victims, I would reverse the district court’s decision on that claim and direct the state to vacate the murder convictions and provide Mr. Torres with a new trial before a properly instructed jury. In any event, I hope the Oklahoma courts will make changes in their approved jury instructions that will alleviate this problem in the future.

. See, e.g, United States v. Randolph, 93 F.3d 656, 664 (9th Cir.1996) (vacating conviction under the federal carjacking statute, 18 U.S.C. § 2119, and concluding that "brandishing a semiautomatic weapon, without more, does not support an inference of ... the specific intent to kill or to inflict serious bodily harm”), abrogated on other grounds by Holloway v. United States, 526 U.S. 1, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999); United States v. Andrews, 75 F.3d 552, 555 (9th Cir.1996) (reversing a conviction for aiding and abetting in a murder even though the defendant brought a rifle to the crime scene because the defendant did not "in any ... obvious way assist ... in shooting the victims” and because there was no evidence that the defendant shared the intent to hurt the victims); United States v. Salamanca, 990 F.2d 629, 639 (D.C.Cir.1993) (concluding that evidence that one defendant aided an abetted in an assault with the intent to kill was insufficient in part because "there is nothing in the record about [that defendant’s] behavior after the assault that indicates [that] he was a participant in any way during the assault”); id. (stating that “[w]e do not mean to suggest that flight is irrelevant as an indicator of guilt .... [b]ut in the circumstances of this case, there is nothing in [the defendant’s] flight that evinces guilt of aiding and abetting as opposed to acting as an accessory after the fact.”); id. at 640 (noting that "the presence of blood on the [defendant's] shirt is not necessarily indicative of proximity during the attack” and "[the defendant] could well have gotten the blood on his shirt after the attack” and therefore concluding that the evidence was insufficient to sustain a conviction for aiding and abetting an assault with the intent to kill); Sanders/Miller v. Logan, 710 F.2d at 645, 653 (10th Cir.1983) (concluding that the prosecution’s "series of strained inferences drawn from [the defendant’s] participation in the robbery is too tenuous to serve as support for the first degree murder conviction of [the defendant] beyond a reasonable doubt”).

. Section 701.7(B) provides:
A person also commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of ... first degree burglary
Okla. Stat. tit. 21 § 701.7(B) (emphasis added).