MOORE, Circuit Judge,
concurring-in-part and dissenting-in-part,
in which PROST, Circuit Judge joins, and LOURIE, RADER, BRYSON, and DYK, Circuit Judges, join as to Part I.
I disagree with the majority’s conclusion that section 3330a(d)(l) of Title 5 is subject to equitable tolling. Therefore, I dissent from Part I of the majority opinion. Additionally, while I agree with the majority that Kirkendall is entitled to a hearing on his Uniformed Services Employment and Reemployment Rights Act (“USERRA”) claim, section 4324(c)(1) cannot be read to confer that right. Rather, I believe that Kirkendall has that right because the Merit Systems Protection Board (“Board”), through its regulations, has defined Kirk-endall’s USERRA claim as an “appeal” for which a hearing is granted under 5 U.S.C. § 7701. Therefore, I concur in the result *854with respect to Part II of the majority’s opinion.
I. Equitable Tolling
The Veterans Employment Opportunities Act of 1998 (“VEOA”) is an employment statute designed to provide certain preference-eligible veterans with a method for seeking redress if veteran’s preference rights have been violated in hiring decisions made by the federal government. See H.R. Rep. No. 106-40(1) (1997), 1997 WL 136375, at *9. By statute, VEOA claimants must first file a complaint with the Department of Labor (“DoL”) within 60 days of the alleged veterans preference violation, 5 U.S.C. § 3330a(2)(A), and if the Secretary of Labor is unable to resolve the complaint, the claimant may appeal to the Board within 15 days of receiving notice that the DoL was unable to resolve the complaint. See 5 U.S.C. § 3330a(d)(l)(B) (2000). The majority holds that both of these deadlines may be equitably tolled.1
While I agree that under our precedent, there is a presumption that equitable tolling applies to Kirkendall’s VEOA appeal under section 3330a(d)(l)(B), in my opinion, Congress rebutted that presumption when enacting the 15-day deadline for appealing to the Board. See Bailey v. West, 160 F.3d 1360, 1364-65 (Fed.Cir.1998) (en banc) (concluding that the Irwin presumption applies to the deadline for filing an appeal under 38 U.S.C. § 7266(a)); see also Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The presumption that equitable tolling applies may be rebutted if “there [is] a good reason to believe that Congress did not want the equitable tolling doctrine to apply.” United States v. Brockamp, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). In Bailey v. West, we stated that “Irwin commands that tolling should be presumed absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute.” 160 F.3d at 1368.
Factors that help us discern Congress’s intent include whether the limitations are provided in unusually emphatic form, whether the limitations are set forth in a highly detailed technical manner, the statute’s underlying subject matter, whether the limitations are reiterated in several different ways, and whether the statute sets forth explicit exceptions. Brockamp, 519 U.S. at 350-52, 117 S.Ct. 849. All Brockamp factors need not be present to find that Congress intended to preclude tolling. See Brice v. Sec’y of Health & Human Servs., 240 F.3d 1367, 1372-73 (Fed.Cir.2001). When analyzing a statute in view of the Brockamp factors, courts must remember that “equitable tolling is not permissible where it is inconsistent with the text of the relevant statute.” United States v. Beggerly, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998); see also Young v. United States, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (noting that it is “hornbook law” that limitations periods are tollable “unless tolling would be ‘inconsistent with the text of the relevant statute’ ”).
The majority only considers the Brock-amp factors in its analysis and turns a blind eye toward other considerations which have traditionally been used to determine Congress’s intent in statutory construction. In determining whether there is “good reason to believe that Congress did not want the equitable tolling doctrine to apply,” Brockamp, 519 U.S. at 350, 117 S.Ct. 849, courts should look at all the evidence of congressional intent including *855all appropriate canons and tools of statutory construction, the plain words of the statute, and the nature of the proceeding provided for in the statute.
Based on the Brockamp factors, the majority concludes that Congress has not expressed a “clear contrary intent,” Bailey, 160 F.3d at 1368, to preclude equitable tolling and therefore the time period in section 3330a(d)(l)(B) can be equitably tolled. I disagree. Numerous factors suggest that Congress did not intend that the 15-day time period for filing an appeal be equitably tolled. These factors include: the emphatic “in no event” language — particularly when compared to the less emphatic language used to specify deadlines elsewhere in the VEOA, the highly detailed and technical structure of the administrative redress scheme embodied in the VEOA and the centrality of the 15-day deadline in that process, that the VEOA is a federal employment statute inherently requiring speedy resolution of grievances, and the fact that the deadline is a mandatory and jurisdictional appellate deadline.
A.
I believe that Congress set forth the 15-day deadline in unusually emphatic form. Brockamp, 519 U.S. at 350-52, 117 S.Ct. 849. Specifically, the “in no event” language is unequivocal and emphatic. The statute provides:
If the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board in accordance with such procedures as the Merit Systems Protection Board shall prescribe, except that in no event may any such appeal be brought—
(A) before the 61st day after the date on which the complaint is filed; or
(B) later than 15 days after the date on which the complainant receives written notification from the Secretary under subsection (c)(2).
5 U.S.C. § 3330a(d)(l) (emphasis added). If the “in no event” language is not meant to foreclose tolling, it would be entirely superfluous. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (adopting construction of a statute that avoids rendering statute’s language “insignificant, if not wholly superfluous”); Williams v. Taylor, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (“It is ... a cardinal principle of statutory construction that we must ‘give effect, if possible to every clause and word of a statute.’ United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955).” (additional citations omitted)). To permit equitable tolling in spite of the “in no event” language would be “inconsistent with the text of the relevant statute” and therefore impermissible. See Beggerly, 524 U.S. at 48, 118 S.Ct. 1862. “In no event” is equivalent to stating “there shall be no exceptions.” Short of saying “equitable tolling shall not apply,”2 Congress could not have been clearer.
Other circuit courts agree that when Congress includes the “in no event” clause in a statute, Congress means what it says. See Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1043 (10th Cir.1980) (interpreting the “in no event” language in the Interstate Land Sales Full Disclosure Act (“ILSFDA,” 15 U.S.C. § 1711) and stating “[t]he last sentence of this section uses strong and unambiguous terms which, if not meant to create an absolute bar to *856untimely suits under the ILDSFA, are extraneous and meaningless”); Caviness v. DeRand Res. Corp., 983 F.2d 1295, 1301 (4th Cir.1993) (stating that permitting equitable tolling of section 13 of the Securities Act of 1933 “would require us to ignore the plain meaning of the language that says ‘in no event’ may an action be filed more than three years after the sale and defeat the very purpose of the statute of repose”); Webb v. United States, 66 F.3d 691, 701-02 (4th Cir.1995) (citing Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1391-92 (7th Cir.1990), which concluded that “[u]nless the ‘in no event more than three’ language cuts off claims of tolling and estoppel at three years ... it serves no purpose at all”); Dubuc v. Johnson, 314 F.3d 1205, 1209 (10th Cir.2003) (noting the irony that the language “in no event” must lead to a result contrary to the purpose of 28 U.S.C. § 1915(g), but finding this insufficient to “justify the judicial repeal of § 1915(g)’s ‘in no event’ language”); Hodgson v. Int’l Printing Pressmen & Assistants’ Union of N. Am., 440 F.2d 1113, 1116-17 (6th Cir.1971) (stating “[i]t may, however, be significant that the more emphatic language ‘but in no event after 60 days’ was not adopted” in assessing the applicability of equitable tolling to 29 U.S.C. § 482(b) (1964)).
The majority would like to divorce the analysis of Congress’s intent from the words of the statute. The majority suggests that the Supreme Court pays “little, if any attention to the specific language” of the statute when determining whether Congress intended the statute to be tolla-ble. Maj. op. at 839. This narrow reading of equitable tolling case law is inconsistent with basic and fundamental tenets of statutory construction, which attempt to discern congressional intent by first looking to the language of the statute itself. See Lamie v. United States Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (“The starting point in discerning congressional intent is the existing statutory text....”); Holloway v. United States, 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999) (“[T]he language of the statutes that Congress enacts provides the most reliable evidence of its intent. For that reason, we typically begin the task of statutory construction by focusing on the words that the drafters have chosen.”); Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (“The starting point in interpreting a statute is its language.... ”); United States v. Scharton, 285 U.S. 518, 521, 52 S.Ct. 416, 76 L.Ed. 917 (1932) (“We are required to ascertain the intent of Congress from the language used [in the statute].”). In my view, the Supreme Court’s equitable tolling cases, like all statutory interpretation cases, require us to consider the language chosen by Congress to determine whether Congress intended that equitable tolling apply. See Beggerly, 524 U.S. at 48, 118 S.Ct. 1862 (“equitable tolling is not permissible where it is inconsistent with the text of the relevant statute”); Brockamp, 519 U.S. at 350-52, 117 S.Ct. 849 (looking at the “unusually emphatic form” for the statute and holding that “linguistically speaking” the statute uses “language that is not simple”).
The majority suggests that the Supreme Court’s decision in Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 349, 22 L.Ed. 636 (1874), underscores the minimal importance of the language of the statute in determining congressional intent. Maj. op. at 838-39 (“[D]espite the statute’s admonishment that ‘no suit ... shall in any case be maintainable,’ the Court, nonetheless, found that equitable relief was not inconsistent.”). In my opinion, Bailey fails to support to the majority’s insistence that we ignore the plain language of the statute in determining congressional intent regarding equitable tolling. That case did *857not involve the “in no event” language used here but rather a less emphatic reference to “in any case,” meaning merely that the statute applied generally. Bailey is not an equitable tolling case. In that case, the Supreme Court adopted what has come to be known as the “fraudulent concealment doctrine.” In the event of fraud, the Supreme Court held that equity would intervene to prevent the claim from accruing despite the statute’s language that “no suit in law or equity shall in any case be maintained ... unless brought within two years.” Id. Bailey, therefore, deals with when a claim accrues and the statute begins to run, carving out an exception to statutes of limitations when the facts giving rise to the cause of action have been fraudulently concealed from a claimant.3 Id. at 349-50. Because there are no allegations that Kirkendall’s appeal was not timely filed due to fraudulent concealment by the government, this narrow exception does not apply. In fact, Kirkendall’s counsel conceded during oral argument that the present appeal addresses equitable tolling and not claim accrual.
B.
Reading the emphatic “in no event” language as it is used in the context of the entire VEOA further evinces Congress’s intent to preclude tolling. In all other parts of the VEOA, Congress used less emphatic language to establish time limits. For example, the statute says that a complaint with the DoL “must be filed within 60 days after the date of the alleged violation.” 5 U.S.C. § 3330a(a)(2)(A). If a claimant chooses to pursue redress through the district courts rather than the administrative process, they must do so “not later than 60 days after the date of the election.” 5 U.S.C. § 3330b(a) (2000 & Supp.2006). Section 3330b(b) states: “[a]n election under this section may not be made — (1) before the 121st day after the date on which the appeal is filed with the Merit Systems Protection Board.” None of the other sections of the VEOA say “in no event.” All other time limits for pursuing action under the VEOA allow for longer time limits and use language which is far less emphatic. Yet, Congress chose a more rigid time period for bringing actions to the Board once the administrative process was underway. Again, proper weight should be given to the words Congress chose, especially where Congress itself has drawn a distinction in the words it used in the same statute. See Sosa v. Alvarez-Machain, 542 U.S. 692, 712 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (stating that there is a “usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended” (internal citations and quotations omitted)); Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); 2A N. Singer, SUTHERLAND Statutory Construction § 46:6 (6th *858ed. 2000) (“[WJhen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.”); United States v. Ahlers, 305 F.3d 54, 59-60 (1st Cir.2002) (“It is accepted lore that when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this differential draftsmanship was deliberate.”). The use of the “in no event” language alongside less emphatic language in the VEOA further convinces me that Congress intended to foreclose equitable tolling in the appeals portion of the process.
C.
Read as a whole, the VEOA is detailed and technical; it sets forth various time limits for filing at the different stages of the administrative process. These time limits are detailed and sequential and further support my conclusion that Congress did not intend the 15-day time period in subsection (d)(1)(B) to be equitably tolled as that deadline stands in the middle of the sequential administrative redress process.4 The structure of subsection (d)(1) is technical in nature and is like the two-tiered structure employed in section 13 of the 1933 Securities Act discussed in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Brockamp factor (that detailed, technical language weighs against tolling) focuses on the detail in the statute’s enumeration of the time limits rather than an analysis of the technical nature of the underlying subject matter to which the statute pertains. See Brockamp, 117 S.Ct. at 851-52 (discussing the detailed, technical language used to set forth the statute’s time limits). The statute in question does not merely prohibit an appeal more than 15 days after receiving notice from the DoL regarding the results of its investigation, but also prohibits the filing of an appeal before the 61st day. See 5 U.S.C. § 3330a(d)(l). The statute, in this case, details a specific window during which the appeal must be filed; it cannot be filed too early (before the 61st day after the date on which the complaint is filed) or too late (more than 15 days after the DoL notice is received). Id.
Although the majority also considers the nature of this window for the appeals process created by Congress, it draws incorrect inferences from it. The majority suggests that the purpose of the “in no event” language is to “introducen a timing requirement that is not a ‘deadline’” and merely “emphasize[s] Congress’ intent to provide a 60-day window left exclusively for DoL review.” Maj. op. at 838. The majority’s conclusion is self-contradictory. The “in no event” language cannot demonstrate congressional intent to bar an early appeal to the Board, but at the same time permit an appeal filed after the 15-day time period — the “in no event” clause applies equally to both subsection (d)(1)(A) and (d)(1)(B).
D.
The substance or subject matter of the statute also leads me to believe that Congress did not intend equitable tolling to apply to the 15-day deadline. The majority believes that the policies underlying sec*859tion 3330a compel the conclusion that the 15-day deadline in section 3330a(d)(l)(B) is subject to equitable tolling. Maj. op. at 841-42, 843-44. It is true that, when possible, veterans’ benefits legislation should be “liberally construed for the benefit of those who left private life to serve then-country in its hour of great need.” Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Courts must, however, be mindful that a statute’s correct construction is consistent with the language Congress chose to use in the statute. The VEOA’s redress mechanism is “modeled after the procedures established in [US-ERRA].” S. Rep. No. 105-340, 1998 WL 658809, at *16 (1998). There is no time limit for filing a USERRA complaint with the Board. See 5 C.F.R. § 1208.12 (“there is no time limit for filing a USERRA appeal directly with the Board”). That the YEOA, an employment statute, includes time limitations for filing with the Board whereas USERRA, an antidiscrimination statute, does not include any such limitation, further weighs in favor of concluding that tolling of the 15-day deadline is inappropriate. Congress’s choice of emphatic language coupled with a relatively short deadline for filing an appeal strongly support the notion that Congress acted deliberately and intended the result that it legislated — particularly where the statute upon which the VEOA was based included no time limits for filing an appeal.
Moreover, Congress chose to codify the VEOA in Chapter 33, Title 5, the section of the United States Code directed to government organization and employees, whereas USERRA is codified in Title 38, which relates to statutory veterans’ benefits. Claims under the VEOA challenge the methodology used by the federal government in reaching hiring decisions and could result in changes in the way that agencies make such decisions. Once a challenge to an agency’s hiring decision has been made, it ought to be resolved expeditiously otherwise uncertainty remains in the government hiring process. Obviously, the government would prefer not to pay two people to do one job and the longer it takes to resolve the hiring dispute, the more money in the way of back pay is at stake. It is therefore important that VEOA complaints are resolved expeditiously so that the government can operate efficiently. Accord 5 U.S.C. § 3301 (2000) (giving the executive power to promulgate such regulations as “will best promote the efficiency of service”).
E.
It is also significant that this statute is one specifying the time for filing an appeal. Although in Bailey v. West we rejected the notion that statutes “specifying the time for review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional,” our holding in Bailey does not preclude us from considering the context of the deadline as relevant to the Brockamp subject matter inquiry.5 Bailey, 160 F.3d at 1367; see *860also Oja v. Dep’t of the Army, 405 F.3d 1349, 1359 (Fed.Cir.2005). Our opinion in Bailey itself recognizes that the Supreme Court has found statutes specifying the time for review to be “mandatory and jurisdictional” and “not subject to equitable tolling.” 160 F.3d at 1366-67; see also Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (holding that judicial review provisions “are mandatory and jurisdictional ... and are not subject to equitable tolling” (internal citations and quotations omitted)); Missouri v. Jenkins, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (stating that the 90-day time period for filing a petition for certio-rari in a civil case is “mandatory and jurisdictional” and that the Court does not have “authority to extend the period for filing except as Congress permits”). Hence, while the fact that the time limit at issue is for filing an appeal rather than an initial cause of action may not be dispositive, we find the context relevant to our analysis. Appeals in this case are filed after the appellant has received notice regarding the specific time periods and location for appealing. In this case, Kirkendall received notification from DoL that his complaint was dismissed as untimely on November 29, 2001. This notification stated that Kirkendall had “the right to take [his] claim to the Merit Staffing [sic Systems] Protection Board (MSPB), that claim must be filed within 15 days of the date following the receipt of this notification.” U.S. DoL Ltr. to Kirkendall (Nov. 29, 2001) (emphasis in original). Kirkendall did not file his appeal with the Board until June 13, 2002 — nearly six months later. For initial filings, in contrast, litigants are often without information as to statutes of limitations periods or even appropriate methods of filing for redress. Accordingly, the nature of the deadline in this case, i.e., the time for filing an appeal, where notice about the filing deadline and requirements had been given, further weighs against a finding that equitable tolling applies.
F.
Although Congress did not create any exceptions to the filing deadlines in section 3330a(d)(l) or repeat the time periods for fifing an appeal, these factors cannot outweigh the evidence that Congress did not intend equitable tolling apply to the 15-day time period. Congress may not have allowed for exceptions because it did not intend for there to be any — as the “in no event” language plainly suggests. Moreover, when Congress speaks clearly expressing its intent that “in no event” may the time period be extended, it seems inappropriate to conclude that the fact that it did not say it twice ought to weigh against giving force and effect to Congress’s words. Hence, while repetition and exceptions may weigh in favor of precluding equitable tolling, and certainly Supreme Court cases confirm that they do, e.g., Brockamp, 519 U.S. at 352, 117 S.Ct. 849, it does not necessarily follow that the absence of these factors favors permitting tolling.6
After considering: the emphatic language which Congress chose to articulate the particular timeframe at issue especially when compared to other timeframes in the *861VEOA; the detailed nature of the redress process in the VEOA; the detailed administrative redress scheme of which 3330a(d)(l) is a small, yet central part of; the fact that the VEOA pertains to federal employment decisions; that the deadline is akin an appellate deadline that is, in many ways, mandatory and jurisdictional in that it is the sole statute providing the Board’s jurisdiction over VEOA claims, I cannot conclude that Congress intended that section 3330a(d)(l)(B) be equitably tolled. Because Kirkendall failed to meet the 15-day deadline for filing an appeal to the Board on his VEOA claim, and that deadline is not subject to equitable tolling, I respectfully dissent.

II. Right to a Hearing on USERRA Claim

The lead opinion holds that section 4324(c)(1) “unambiguously” requires the Board to provide Kirkendall a hearing on his USERRA claim.7 I do not agree with the interpretation of the statute reached in the lead opinion. Rather, I conclude that the Board’s own regulations, rather than anything in USERRA, provide Kirkendall with the right to a hearing under section 7701 of Title 5. It is for this reason that I concur only in the result with respect to Part II of the lead opinion.
A.
Section 4324(c)(1) provides in full:
The Merit Systems Protection Board shall adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b), without regard as to whether the complaint accrued before, on, or after October 13, 1994. A person who seeks a hearing or adjudication by submitting such a complaint under this paragraph may be represented at such hearing or adjudication in accordance with the rules of the Board.
38 U.S.C. § 4324(c)(1) (2000) (emphasis added). The plurality relies heavily on the language that that Board “shall adjudicate any complaint brought before [it].” Maj. op. at 844 (quoting section 4324(c)(1)). Nothing in the statute requires that “adjudication” automatically include a “hearing.” In fact, the word “adjudication” is used disjunctively from the term “hearing” and indicates that they have different meanings. Sosa, 542 U.S. at 712 n. 9, 124 S.Ct. 2739. The plurality believes that any interpretation of the statute that does not confer the right to a hearing renders the “at such hearing” language of the statute “nonsensical.” Maj. op. at 844. To reach this conclusion the plurality ignores the words of the statute, which permit representation in the court of “such hearing or adjudication.” 38 U.S.C. § 4324(c)(1) (emphasis added). The statute only requires: (1) retroactivity; and (2) that a person be entitled to representation when the Board hears or adjudicates their US-ERRA claims. Id. This statute cannot reasonably be read to mandate a right to a hearing on all USERRA claims.
Even if section 4324(c)(1) were ambiguous, which it is not, the legislative history demonstrates that during the enactment of this section changes were made to the statutory language to address concerns regarding whether the Office of Special Counsel would be required to represent USERRA claimants or how representation would be made available. See, e.g., Joint EXPLANATORY STATEMENT On H.R. 955, 140 CONG. REC. H 9136 (1994) reprinted in 1994 U.S.C.C.A.N. 2493, 2509-10 (explain*862ing the adoption of the Senate proposal that an “individual would be able to be represented before the MSPB by a representative of choice”); S. Rep. No. 103-158, at 37 (1993) (stating that USERRA would “[ejnable Federal executive agency employees ... to receive representation by the Office of Special Counsel before the MSPB and the U.S. Court of Appeals for the Federal Circuit”). I have found nothing in the legislative history that suggests that Congress intended section 4324(c)(1) to mandate that the Board provide a hearing to all USERRA claimants. In fact, the legislative history, as reflected in the statute, indicates that the Board would be free to promulgate rules to govern the USER-RA claims process. See 38 U.S.C. § 4331(2)(A) (2000); S. Rep. No. 103-158, at 75 (1993) (“Although [the Board] may have authority under title 5, United States Code, to prescribe necessary regulations, explicit inclusion of that authority in chapter 43 of title 38 would remove any doubt on this matter.”); see also 5 U.S.C. § 1204(a)(1) (2000) (amended with enactment of USERRA to permit the Board to “hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under ... [USERRA], or any other law, rule, or regulation ...” (emphasis added)).
Although the plurality determines that the statutory language unambiguously requires a hearing, the majority also relies on Fishgold, 328 U.S. at 285, 66 S.Ct. 1105 and King v. St. Vincent’s Hospital, 502 U.S. 215, 220 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), to conclude that “it is abundantly clear that Congress’ intent is to provide veterans a hearing upon request, especially because” we resolve statutory ambiguities in favor of the veteran. Maj. op. at 845-^46. The statute is unambiguous and, in my opinion, does not convey an automatic right to a hearing.
B.
Although I do not believe section 4324 conveys a right to a hearing in every case, I do conclude Kirkendall is entitled to a hearing based on the Board’s regulations. Section 7701 of Title 5 of the United States Code applies to appeals to the Board “under any law, rule, or regulation.” See also 5 U.S.C. § 1204(a)(1) (2000) (giving the Board authority to hear or adjudicate any matter brought within its jurisdiction by “any ... rule, or regulation”). The plain import of this language permits appeals to lie with the Board not only under laws, but also under rules and regulations. Here, the Board has promulgated regulations that invoke section 7701 by repeatedly defining USERRA claims as “appeals” and by placing these claims within its appellate jurisdiction.8 See 5 C.F.R. §§ 1201.3(b)(1), 1208.4(a), 1208.13. The Board’s regulations clearly define USERRA claims to be within the Board’s appellate jurisdiction. See, e.g., 5 C.F.R. § 1201.3(b)(1); Petersen v. Dep’t of the Interior, 71 M.S.P.R. 227, 234 (1996) (stating that “both the language and legislative history of USERRA make it evident that all cases under USERRA brought by the individual appellants fall within the Board’s appellate jurisdiction”). The Board’s intent when it enacted the rules enabling USERRA was clear: US-ERRA actions are “appeals.” See 65 Fed. Reg. 49,895 (Aug. 16, 2000) (notice of final rulemaking for subpart 1208 referring to USERRA claims as “appeals”); 65 Fed. Reg. 5,409 (Feb. 4, 2000) (addressing new subpart 1208 and continuing to refer to USERRA claims as “appeals”); 62 Fed. Reg. 66,813 (Dec. 22, 1997) (stating that USERRA provides federal employees ex*863panded rights “including a new statutory right to appeal a USERRA violation to the MSPB”). Given that the Board treats US-ERRA proceedings as appeals, USERRA proceedings are subject to the procedures specified in section 7701 and Kirkendall had a right to a hearing.9

. Because I conclude that the 15-day deadline is not subject to equitable tolling, I need not reach the question of whether the 60-day deadline may be equitably tolled.

. Appellant proffered this language to the court during oral argument, but could point to no statute in which Congress used this language.

. Although Bailey has been cited in cases wording the applicable doctrine as "equitable tolling,” this does not change the limited nature of the holding in Bailey. For example, in Lampf, the petitioner's arguments were directed to whether fraud should equitably relax the deadline at issue. 501 U.S. at 363, 111 S.Ct. 2773 ("Thus, this Court has said that in the usual case, 'where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.’ ") Read in context, the Supreme Court’s citation of Bailey in Lampf makes sense. Therefore, I do not read the Supreme Court’s decisions as interjecting Bailey's fraudulent concealment doctrine into all equitable tolling cases where fraud is not at issue.

. The majority suggests that the short 15-day time period favors tolling, relying on the three — and twelve-year periods of Lampf and Beggerly. Maj. op. at 841. The statutes at issue there, however, were limitation periods for bringing actions, rather than time for review provisions, as in this case. This distinction is an important one. There is clearly an interest in expeditious resolution of employment disputes once in progress, thereby justifying much shorter time limits.

. To the extent that Bailey is read as permitting equitable tolling even where a statute is decisively "mandatory and jurisdictional” it would seem inconsistent with Supreme Court precedent. Missouri v. Jenkins, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990); Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995); see also Neverson v. Farquharson, 366 F.3d 32, 40 n. 8 (1st Cir.2004) ("[I]t may be that when a time limit is phrased in jurisdictional terms, the Irwin presumption is rebutted;” "the Supreme Court after Irwin has continued to characterize jurisdictional' time limits as ineligible for equitable tolling.”). If Stone and Jenkins are interpreted as prohibiting equitable tolling of *860statutoiy time limits that are mandatory and jurisdictional, equitable tolling would not be permitted in this case because section 3330a(d)(l) is the sole statutory section providing an individual the ability to appeal a VEOA violation to the board.

. For example, had Congress said “equitable tolling shall not apply,” would the majority still suggest that because they did not say it twice or allow exceptions, tolling is permitted?

. Notably, no party or amici at any time during any of the proceedings before this court suggested that section 4324(c)(1) provides an automatic right to a hearing as the majority holds.

. In fact, the Board's regulations refer to US-ERRA actions as "appeals” 29 times and the person bringing the action before the Board as the "appellant” 28 times.

. The Board interpreted 5 C.F.R. § 1208.13 as permitting it to exercise discretion on whether or not Kirkendall was entitled to a hearing. Kirkendall v. Dep’t of the Army, AT-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-B-l, AT-0330-02-0621-B-1 at 6 n. 3. Because the Board has consistently treated USERRA actions as "appeals,” its interpretation of 5 C.F.R. § 1208.13 as giving it discretion to grant a hearing in a USERRA action is improper and inconsistent with the body of its regulations.