NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1379
_____

UNITED STATES OF AMERICA

v.

MICHAEL GREEN
a/k/a MIKEY

Michael Green,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cr-00159-001)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2016

Before:  JORDAN, GREENAWAY, JR., and RENDELL, *Circuit Judges*.

(Filed: November 16, 2016)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Michael Green was convicted of armed carjacking in violation of 18 U.S.C. § 2119. On appeal he complains about the exclusion of a juror, the sufficiency of the evidence, limitations placed on an expert's testimony, and sentence enhancements used to raise his offense level. All of his claims lack merit, and we will affirm.

## I. Background

### A. Factual Background

Green and an unidentified accomplice carried out an armed carjacking while impersonating police officers. They used red and blue flashing lights on their car to mimic the lights on a police cruiser and pulled over a Chevrolet Silverado pickup truck. They then approached the vehicle on foot, wearing police uniforms and displaying badges.

As Green and his accomplice approached the vehicle, the driver, Osvaldo Ortega, observed that Green and his accomplice were armed with what appeared to be handguns. Green told Ortega that he was a police officer and that Ortega was under arrest. He demanded that Ortega get out of the truck. When Ortega refused and asked what he had done to justify being pulled over, Green opened the door and threw Ortega out of the vehicle and onto the ground. He then handcuffed Ortega's hands behind his back, and forced him into the rear driver's side seat of the truck. The two passengers in Ortega's truck, Luis Rosado and Juan Saez-Santos, were also handcuffed and placed in the back seat of the truck. Green allegedly targeted the pickup because Ortega, Rosado, and Saez-

2

Santos were all drug dealers and Green wanted to steal their drugs. Green went back to his vehicle, removed the police lights from the dashboard, placed them in a bag, and put the bag in the back of the pickup truck. He then parked his vehicle a few blocks away. Green's accomplice drove the truck and picked up Green, who got in the front passenger seat.

As they drove off, Ortega declared that Green and his accomplice were "not real cops." Green responded by pointing his handgun at Ortega and repeatedly threatening to kill him if he did not "shut up." After some further argument, Green hit Ortega on the head, shoulder, and legs with the handgun. Green also hit Rosado with the weapon and repeatedly struck Saez-Santos in the eye with it.

Ortega, Rosado, and Saez-Santos managed to free themselves by jumping from the moving vehicle. The impact broke Rosado's right arm and he was hospitalized for several days with radial nerve damage that took months to heal. Ortega and Saez-Santos reported the carjacking to the police, and the police quickly found the fake police car. It was a rental car from the Philadelphia Airport that had been rented in Green's name.

Detective John Palmeiro of the Philadelphia Police Department led the investigation into the carjacking. He obtained Green's photograph and created a photo array that he showed to the three victims. Ortega identified Green as one of his attackers, but Rosado and Saez-Santos were unable to make an identification. Palmeiro knew that Green was the suspect when he presented the array, but he claims that he did not in any way suggest that Ortega should choose Green.

3

Palmeiro also conducted a search of the rental car pursuant to a warrant. Green's fingerprints were found inside the vehicle. A wallet -- with Green's driver's license and numerous credit cards in his name -- and two cellular phones belonging to Green were also recovered.

Nearly one month after the carjacking, the pickup truck was recovered. It had sustained damage from a fire that the police determined was intentionally set. DNA evidence recovered from the truck was inconclusive.

## B. Procedural Background

Green was indicted both for "tak[ing] a motor vehicle … from the person or presence of another by force and violence," with "the intent to cause death or serious bodily harm," in violation of 18 U.S.C. § 2119, and for using and carrying a firearm while committing a crime of violence, in violation of 18 U.S.C. § 924(c).[1]

### 1. *Voir Dire*

During *voir dire*, the prospective jurors were asked whether any of their immediate family, close friends, or relatives had been defendants in a criminal case. One of the jurors initially answered no, yet she came forward a few days later, after being selected but before the trial had started, and acknowledged that she had answered the question incorrectly. She informed the Court that a relative had been charged with a DUI and her two brothers had been charged with simple assault. The government moved to strike her for cause, arguing that this was "more than an oversight" and that the juror

---

[1] For both counts, Green was also charged as an accomplice under 18 U.S.C. § 2.

could no longer be trusted. (App. at 303.) That motion was granted, and the juror was replaced by one of the alternates

## 2. *The Photo Array and the Expert's Testimony*

Green sought to suppress any mention of Ortega's identification of Green from the photo array. The District Court concluded that the array was not unduly suggestive and that evidence of the identification was therefore admissible.

At trial, Green, seeking to discredit the photo array, introduced an expert witness, Michael Leippe, to testify about best practices police should use with photo arrays, cross-racial identification bias, and "weapon focus."[2] During the suppression hearing before trial, the District Court asked Green's counsel if the defense intended to ask Leippe whether "the procedures used in this particular case were proper." (*Id.* at 272.) Green's attorney answered that she "was not going to ask him that question" but instead would focus on "general questions about the way Philadelphia police conduct arrays … ." (*Id.* at 273.) Counsel said further that she felt "it's the province of the court to say whether a specific array was unduly suggestive" and that it therefore "would be an improper question." (*Id.* at 273.) Nevertheless, she reiterated that she wanted to ask the witness "to discuss his knowledge of the field generally and then relate that specifically, whatever issues the specific facts in this case raise based upon his knowledge." (*Id.* at 280.) The Court reserved ruling on the scope of Leippe's testimony.

---

[2] "Weapon focus" is the theory that victims are unable to properly record memories of faces during violent crimes because their attention is focused on the weapon involved in the commission of the crime.

Right before Leippe testified, the District Court ruled that he could "testify as to the specific factors that may influence … an identification," but he could not "discuss[] too closely the facts of this case other than … the fact that the specific factors apply." (*Id.* at 737-38.) Leippe could not "get[] into opinions about this case and how the jury should view the evidence and testimony in this case other than, this is the science." (*Id.* at 738.)

When Leippe testified, Green's attorney asked a variety of questions about best practices for photo arrays. Leippe also testified about difficulties in cross-racial identification. Green's counsel did not ask specific questions about the photo array that had been used in this case but asked hypothetical questions about similar photo arrays. And, during closing arguments, counsel was permitted to discuss the expert's testimony, argue how it applied to the facts of the case, and suggest that the photo array was flawed in a variety of ways.

### 3. Verdict, Sentencing, and Appeal

The jury found Green guilty as charged. At sentencing, the District Court gave him a four-level offense enhancement under the sentencing guidelines, based on the serious injury to Rosado. It also added a four-level offense enhancement for abducting Ortega, Rosado, and Saez-Santos during the carjacking. On the carjacking count, the Court imposed a sentence of 180 months' imprisonment, which was within the recommended guidelines range. The firearm charge carried a mandatory consecutive term of at least 60 months and the District Court sentenced him to 68 months on that

6

count.  Green was already in prison for an unrelated crime, and his sentence in this case was set to run concurrently with the sentence he was then serving.

Before sentencing, Green filed a motion for acquittal under Federal Rule of Criminal Procedure 29(c), and a motion for a new trial under Rule 33.  Those motions were denied, and Green timely appealed.

## III.    DISCUSSION[3]

### A.    There was No Error in Excluding the Juror

Green first claims that the District Court should not have dismissed the juror who failed to accurately answer the question about being related to anyone charged with a crime.  We review for abuse of discretion a district court's decision to dismiss a juror for cause.  *United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992).  "Determining whether a prospective juror can render a fair verdict lies 'peculiarly within a trial judge's province.'"  *Id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)).  In accordance with the broad deference we necessarily give the District Court, we see no error in its decision to dismiss that juror.  The question posed to the juror in *voir dire* regarding family members who had faced criminal charges was unambiguous.  And even though the juror came forward and claimed to have misunderstood the question, we cannot say the Court was wrong to conclude that the juror's incorrect answer during *voir dire* rendered her service on the jury inappropriate.

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

In any event, even if the Court had improperly excluded the juror, that by itself would not be a sufficient basis for requiring a new trial. The Constitution guarantees a right to an impartial jury, not the right to have a particular juror remain on the jury. *See United States v. Martinez-Salazar*, 528 U.S. 304, 311-13 (2000) (explaining that the process of selection is not of "federal constitutional dimension. … [s]o long as the jury that sits is impartial …"). While the "wholesale exclusion of a particular group" might be harmful even without proof of "the existence of actual prejudice in the resulting jury panel," *United States v. Salamone*, 800 F.2d 1216, 1227 (3d Cir. 1986), the improper exclusion of a single juror, except in circumstances where invidious discrimination is a threat, *e.g., Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986), would ordinarily not be of constitutional magnitude, absent proof of prejudice. *Cf. U.S. v. Shiomos*, 864 F.2d 16, 18-19 (3d Cir. 1988) (noting that there "is no reversible error" without proof "that some class of juror was improperly excluded … or that the panel ultimately chosen was in any way not impartial"). And Green does not offer a scintilla of evidence, or even attempt to argue, that the exclusion of the juror in quesion led to a biased jury or caused him prejudice in any way.

**B.      There was Sufficient Evidence to Sustain Green's Conviction**

Green next argues that there was insufficient evidence to sustain the jury's verdict. With regard to the gun charge, he claims that there was no evidence that he had used an actual firearm. With regard to the carjacking charge, he claims that there was no evidence of "intent to cause death or serious bodily harm," one of the elements required for his conviction.

8

Green, in his motion for a judgment of acquittal, challenged the carjacking conviction but did not challenge the firearm conviction. We therefore review his firearm conviction for "plain error" and will overturn the conviction on that count only if "we determine the evidence presented was so insufficient that for us to uphold his conviction would result in a miscarriage of justice or be fundamentally wrong." *United States v. Barel*, 939 F.2d 26, 31 (3d Cir. 1991). For the carjacking count, we will sustain the jury's verdict "if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003 (quoting *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000)). We "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *U.S. v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal quotation marks and citation omitted). The evidence here is more than sufficient to affirm on both counts.

### 1. The Firearm Conviction

Green's argument with regard to the firearm conviction turns on information in the record that was not presented to the jury. He says that his gun was not real, relying on a statement that Saez-Santos made to the police that described him grabbing Green's gun and unsuccessfully trying to fire it twice. On appeal, we ask whether the evidence that was before the jury can support the verdict. So we cannot, and do not, take into account

9

evidence that was not presented to the jury at trial. [4] *See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 96 (3d Cir. 1990) ("This Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record." (citations omitted)). Without the argument that the gun must have been fake because it did not fire, Green's sufficiency of the evidence claim – already weak – collapses completely.[5]

All that is left is Green's claim that the testimony of Ortega and Saez-Santos that Green had a firearm is insuffcient because there was no way to verify that the gun was not a toy or an inoperable replica. But in *United States v. Beverly*, 99 F.3d 570, 572 (3d Cir. 1996), we found that non-expert testimony that a robber used a gun may, in and of itself, suffice to support a conviction for using a firearm in commission of a violent crime. Both Ortega and Saez-Santos had "ample time to view the weapon[]" and their testimony could rightly have been credited by the jury. *Id.* at 573. The jury's conclusion that Green used a firearm in the commission of a violent crime certainly was not

---

[4] Even if we were to take into account Saez-Santos's testimony that the gun did not fire, that testimony would not compel a different outcome. A firearm is defined in the relevant statute as "any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive … ." 18 U.S. C. § 921(a)(3). The weapon need not actually be operable in order to be a firearm. *See United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005) (holding that an inoperable pistol was a firearm under Section 921(a)(3)).

[5] Green claims that the government had an obligation to introduce Saez-Santos's remarks into evidence. He seems to be putting a new spin on *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963) (requiring the disclosure of evidence that "would tend to exculpate" the accused and is "material either to guilt or to punishment"). But there is no toe-hold for even a traditional *Brady* claim because, as just noted, *supra* note 4, Saez-Santos's remark is not exculpatory.

fundamentally wrong and did not "result in a miscarriage of justice." *Barel*, 939 F.2d at 31.

### 2. *The Carjacking Conviction*

A conviction for carjacking requires "intent to cause death or serious bodily harm." 18 U.S.C. § 2119. Green argues that there was no evidence of the required *mens rea* because he was simply bluffing and did not intend to cause harm. In effect, Green argues that if he did not want to injure his victims, then he could not have had the required mental state. However, the mental state required is not an unconditional intent to cause harm. Instead, in *Holloway v. United States*, 526 U.S. 1, 7-8 (1999), the Supreme Court made it clear that a "conditional … intent" is sufficient to sustain a conviction. The prosecution need only "prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill … if that action had been necessary to complete the taking of the car." *Id.* at 12. On the other hand, "an empty threat, or intimidating bluff," is, without more, not sufficient. *Id.* at 11.

Our precedent illustrates that Green's actions demonstrate the requisite conditional intent to cause death or serious bodily harm. In *United States v. Lake*, an individual stole a car after waving a gun at the driver and ordering the driver to give him the keys. 150 F.3d 269, 272 (3d Cir. 1998). We affirmed the defendant's conviction for the use of a firearm in the process of a carjacking and in doing so found that there was sufficient evidence to support the underlying offense of carjacking. *Id.* at 272-73. We emphasized that "a rational jury could find that [the defendant] had the intent to kill or cause serious bodily injury to [the driver] if she did not comply with his demands." *Id.* at 272.

11

Green's actions provided the jury with even more grounds to convict than the defendant's actions in *Lake*. He showed plainly his willingness to use force. He slammed Ortega to the ground, repeatedly threatened to kill him, and pistol whipped him and the other occupants of the vehicle. We agree with the District Court that this evidence "was more than compelling in establishing that the Defendant possessed the requisite intent … ." (App. at 19.)

Green also argues that, even if he had the requisite intent, he did not possess it contemporaneously with the crime. *See Holloway*, 526 U.S. at 7-8 (requiring contemporaneous intent). That argument is also unfounded. He approached the vehicle with his gun drawn and immediately threatened the individuals in the vehicle. The jury could have reasonably believed that he had violent intentions at the time he demanded that Ortega exit the vehicle.

### D. Any Error in Limiting Leippe's Testimony was Harmless

Green argues that the District Court should have let him question Leippe about the specific facts of this case – in particular about the suggestiveness of the photo array that Detective Palmeiro used. The government responds that the whole line of questioning was waived by Green's concession that asking "whether a specific array was unduly suggestive … would be an improper question." (App. at 273.) For purposes of this appeal, we assume without deciding, that Green's argument was not waived. We therefore review the District Court's ruling on the scope of expert testimony for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001).

The District Court did not state a legal basis for narrowing the scope of Leippe's testimony, which makes evaluating the ruling difficult. But it appears that the Court was concerned that the expert would "get[] into opinions about this case and how the jury should view the evidence and testimony in this case … ." (App. at 738.) Ordinarily, an expert may testify and offer his opinion as to the facts of a particular case or an ultimate issue in the case, Fed. R. Evid. 702, 704, though the balancing considerations of Rule 403 still apply. No balancing was discussed by the District Court here.

We do not, however, need to decide whether the District Court erred because, even if there was error, it was harmless. "[It] is highly probably that" any error "did not contribute to the judgment." *See United States v. Stevens*, 223 F.3d 239, 244 n.5 (3d Cir. 2000) (internal quotation marks omitted)). Green, through his counsel, was able to ask Leippe to apply his expertise to nearly identical facts through the use of hypothetical questions. And, in closing arguments, counsel took full advantage of the opportunity to apply Leippe's answers to the specific facts of this case. Thus, Green was not truly foreclosed from presenting his version of the facts to the jury.

Moreover, the evidence of Green's guilt was overwhelming, including the discovery of Green's driver's license and fingerprints in the car that was used in the fake police traffic stop. Having the expert declare that there were flaws in the photo array or that Ortega made an error in identification was, therefore, highly unlikely to sway the jury.

E.      **The District Court Properly Applied the Sentencing Guidelines**

Finally, Green challenges the sentencing enhancements that were applied in calculating the guidelines range for his sentence. He claims that the government failed to produce evidence necessary to prove that Rosado suffered a serious bodily injury.[6] He also argues that the victims were abducted not to "facilitate commission of the offense or to facilitate escape," U.S. Sentencing Guidelines Manual § 2B3.1(b)(4)(A) (U.S. Sentencing Comm'n 2016), but to rob them of their drugs. Neither of those arguments carries the day.

### 1. A Broken Bone Constitutes a Serious Bodily Injury

Green argues that Rosado's fracture was not a "serious bodily injury."[7] We review the District Court's determination that Rosado's injury was serious for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

A "serious bodily injury" is an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(L) (U.S. Sentencing Comm'n 2016). Rosado's fractured bone required "hospitalization" and "physical rehabilitation," and the record substantiates that Roasdo was in "extreme

---

[6] The government bears the burden of proving facts that support an increase in the base offense level of a guidelines calculation. *United States v. McDowell,* 888 F.2d 285, 291 (3d Cir. 1989).

[7] Green concedes that he caused "bodily injury" which is defined as "any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(B) (U.S. Sentencing Comm'n 2016).

physical pain" and required serious medical attention as a result of the injury. In fact, one of the officers who first encountered Rosado after the carjacking testified that he "could see [Rosado's] bone pushing the skin out from the fracture itself." (App. at 438.) There was no error, let alone clear error, in applying the enhancement for serious bodily injury. *Cf. United States v. Reese*, 2 F.3d 870, 897 (9th Cir. 1993) (finding that a victim "diagnosed with a fractured elbow and ordered to wear a sling" suffered a serious bodily injury).

### 2.     *There was an Abduction that Facilitated the Carjacking*

Section 2B3.1(b)(4)(A) of the Sentencing Guidelines provides for an offense level enhancement when "any person was abducted to facilitate commission of the offense or to facilitate escape[.]"  We review the District Court's decision to apply the sentencing enhancement for abuse of discretion. *United States v. Fumo*, 655 F.3d 288, 314 (3d Cir. 2011).

The guidelines define "abducted" expansively as being "forced to accompany an offender to a different location."  U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(A) (U.S. Sentencing Comm'n 2016).  There is no question that Ortega, Rosado, and Saez-Santos were "abducted" when they were forced out of the vehicle, handcuffed, forced back into the vehicle, and driven away. *Cf. United States v. Reynos*, 680 F.3d 283, 291 (3d Cir. 2012) (concluding that forcing the employees of a store to move from a restroom towards the cash register constituted an abduction).  While Green argues that the abduction did not "facilitate" the crime or his efforts to escape, it obviously did.  By placing his victims in the car, Green made it less likely that they would report the

15

carjacking to the police in a timely fashion. The abduction therefore facilitated his

escape, and the District Court did not abuse its discretion in imposing the sentencing

enhancement.[8]

**III.    CONCLUSION**

For the foregoing reasons, we will affirm Green's conviction and sentence.

---

[8] Green's argument that robbery was the real motive is irrelevant. Green could have had more than one motive in his decision to abduct the victims and it was not clear error for the jury to credit the prosecution's account. *See United States v. Napolitan*, 762 F.3d 297, 312 (3d Cir. 2014) (noting that we review the District Court's factual determinations for clear error).